# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

STEPHEN EISELE, as the natural parent
and legal guardian of C.E., a minor,

      Plaintiff,

v.

RAZOR USA, LLC, WALMART, INC.,
and WAL-MART STORES EAST, LP,

      Defendants.

Case No.: _____

## COMPLAINT

**COMES NOW** Plaintiff, Stephen Eisele, as the natural parent and legal guardian of C.E., a minor, to sue Defendants, Razor USA, LLC, Walmart, Inc., and Wal-Mart Stores East, LP. In support thereof, Plaintiff states:

### SUMMARY OF THE ACTION

1.    Plaintiff brings this civil action to recover for the severe and permanent injuries his minor child, C.E, suffered when a dangerously defective Razor Hovertrac 2.0 Hoverboard (the "Hoverboard") randomly activated and degloved the fingers of the minor child's left hand. As a result of this random activation, C.E. suffered full thickness third and fourth degree burns to the left index, long, and ring fingers, full thickness soft tissue loss down to bone of the left long finger, extensor tendon laceration to the left long finger, permanent loss of full range of motion in the left index, long, and ring fingers, permanent disfigurement, aggravation of autism spectrum disorder, and behavioral complications.

2.      Plaintiff sues Defendants as the natural parent and legal guardian of C.E. to recover for all injuries and damages caused by Defendants' strict liability, negligence, and other-liability producing misconduct.

## JURISDICTION & VENUE

3.      At all times material hereto, Plaintiff, Stephen Eisele ("Eisele"), is a Florida citizen, resident, and domiciliary who lives in Seminole County, Florida.

4.      At the time of filing this Complaint, C.E. is Eisele's minor child who is eight years old.

5.      At all times material hereto, Defendant, Razor USA, LLC ("Razor"), is a Delaware limited liability company. Razor's sole member is Small Minds Press, Inc. Small Minds Press, Inc. is a California corporation with its principal place of business located in Washington.

6.      Razor is not authorized by the Florida Department of State to do business in Florida. Razor may be served with process by serving its registered agent: The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

7.      At all times material hereto, Defendant, Walmart, Inc. ("Walmart"), is a Delaware corporation with its principal place of business located in Arkansas.

8.      Walmart is authorized by the Florida Department of State to do business in Florida. Walmart may be served with process by serving its registered agent: CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

9.      At all times material hereto, Defendant, Walmart Stores East, LP ("Walmart Stores") is a Delaware limited partnership. Walmart Stores' sole partner is WSE Management, LLC. WSE Management, LLC is a Delaware limited liability company. WSE Management,

LLC's membership consists of Wayne Hamilton, Gordon Allison, Michael S. Moore, and Mark Ibbotson. Wayne Hamilton is an Arkansas citizen, resident, and domiciliary. Gordon Allison is an Arkansas citizen, resident, and domiciliary. Michael S. Moore is a Michigan citizen, resident, and domiciliary. Mark Ibbotson is an Arkansas citizen, resident, and domiciliary.

10. Walmart Stores is authorized by the Florida Department of State to do business in Florida. Walmart Stores may be served with process by serving its registered agent: CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Eisele is a citizen of a state of which no Defendant is a citizen and the amount in controversy exceeds $75,000.

12. This Court is authorized to exercise personal jurisdiction over each Defendant pursuant to the Florida Long-Arm Statute, Fla. Stat. §§ 48.193(1)(a)(1), (1)(a)(2), and (1)(a)(6), because the causes of action stated herein arise out of each Defendant:

   a. Operating, conducting, engaging in, or carrying on a business or business venture in Florida or having an office or agency in Florida;

   b. Committing a tortious act within Florida; or

   c. Causing injury to persons or property within Florida arising out of an act or omission committed outside Florida where, at or about the time of the injury, either (i) each Defendant was engaged in solicitation or service activities within Florida, or (ii) products, materials, or things processed, serviced, or manufactured by each Defendant anywhere were used or consumed in Florida in the ordinary course of commerce, trade, or use.

13. This Court is authorized to exercise personal jurisdiction over each Defendant pursuant to the Florida Long-Arm Statute, Fla. Stat. § 48.193(2), because each Defendant is engaged in substantial and not isolated activity within Florida.

14. This Court is authorized to exercise personal jurisdiction over each Defendant because each Defendant may fairly be regarded as at home in Florida.

15. Venue is proper in this Court because Defendants reside within the Middle District of Florida and a substantial part of the events or omissions giving rise to the claims stated herein occurred within the Middle District of Florida.

## CONDITIONS PRECEDENT

16. All conditions precedent have been satisfied or excused.

## FACTS

17. On December 20, 2017, Eisele purchased the subject hoverboard from Walmart store number 3207 located in Sanford, Florida.

18. On February 24, 2018, the subject hoverboard was resting on the floor.

19. At that place and time, and without any warning or input from a user, the subject hoverboard suddenly activated, which caused the subject hoverboard's lights and wheels to turn on and start moving.

20. Attracted to the lights, sounds, and movement of the phantom subject hoverboard, C.E. walked over to the subject hoverboard and attempted to pick it up.

21. As C.E. reached for the subject hoverboard, C.E.'s left hand became entangled in one of the subject hoverboard's wheels. The wheel continued to spin and tore thorough C.E.'s flesh.

22. After several seconds of trying to remove the hand from the subject hoverboard's spinning wheel, C.E. finally freed the hand.

23. The subject hoverboard is defective in its design, manufacture, and warning.

24. The subject hoverboard's defective condition rendered the subject hoverboard unreasonably dangerous beyond the contemplation and expectation of ordinary consumers and users, including Plaintiff and C.E.

25. The risk of danger associated with designing, manufacturing, assembling, supplying, distributing, and selling the subject hoverboard as it was outweigh any real or perceived benefits. At the time the subject hoverboard was designed, manufactured, assembled, supplied, distributed, and sold, alternative designs and methods of manufacturing existed that would have resulted in a safer and more useful product with little to no increase in cost.

26. The subject hoverboard's defective condition caused or contributed directly to cause injury and damage to Plaintiff and C.E.

## **COUNT I—STRICT LIABILITY**
**(Against Razor)**

27. Plaintiff re-alleges and incorporates paragraphs 17 through 26 of this Complaint as if fully stated herein.

28. Razor is engaged in the business of designing, manufacturing, supplying, distributing, advertising, marketing, and selling hoverboards and other self-balancing electric scooters.

29. Razor designed, manufactured, imported, marketed, advertised, supplied, distributed, and sold the subject hoverboard and placed the subject hoverboard into the stream of commerce.

30. The subject hoverboard is defective in its design, manufacture, and/or warning.

31. The subject hoverboard's defective condition rendered the subject hoverboard unreasonably dangerous for its intended or foreseeable use.

32. The subject hoverboard's defective condition existed at the time the subject hoverboard left Razor's possession, custody, and control, and the subject hoverboard remained in its defective condition until and throughout the incident giving rise to this lawsuit.

33. The subject hoverboard's defective condition actually and proximately caused injury and damage to C.E.

**WHEREFORE**, Plaintiff, Stephen Eisele, as the natural parent and legal guardian of C.E., demands judgment against Defendant, Razor USA, LLC, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, punitive damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

### COUNT II—NEGLIGENCE
### (Against Razor)

34. Plaintiff re-alleges and incorporates paragraphs 17 through 26 of this Complaint as if fully stated herein.

35. Razor is engaged in the business of designing, manufacturing, supplying, distributing, advertising, marketing, and selling hoverboards and other self-balancing electric scooters.

36. Razor designed, manufactured, imported, marketed, advertised, supplied, distributed, and sold the subject hoverboard and placed the subject hoverboard into the stream of commerce.

37. Razor owed a duty to properly design, manufacture, assemble, supply, distribute, and sell the subject hoverboard in a safe condition and without defect.

38. Razor owed a duty to adequately test, inspect, and assure the quality of the subject hoverboard before placing the subject hoverboard into the stream of commerce.

39. Razor owed a duty to provide adequate warnings, instructions, education, and information with the subject hoverboard.

40. Razor breached the above duties.

41. Razor's breach of the above duties actually and proximately caused injury and damage to C.E.

**WHEREFORE**, Plaintiff, Stephen Eisele, as the natural parent and legal guardian of C.E., demands judgment against Defendant, Razor USA, LLC, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, punitive damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

### COUNT III—STRICT LIABILITY
**(Against Walmart)**

42. Plaintiff re-alleges and incorporates paragraphs 17 through 26 of this Complaint as if fully stated herein.

43. Walmart is engaged in the business of operating retail stores throughout the United States and Florida through which Walmart advertises, markets, distributes, and sells a wide range of consumer goods, including hoverboards.

44. Walmart marketed, advertised, supplied, distributed, and sold the subject hoverboard and placed subject hoverboard into the stream of commerce.

45. The subject hoverboard is defective in its design, manufacture, and/or warning.

46. The subject hoverboard's defective condition rendered the subject hoverboard unreasonably dangerous for its intended or foreseeable use.

47. The subject hoverboard's defective condition existed at the time the subject hoverboard left Walmart's possession, custody, and control, and the subject hoverboard remained in its defective condition until and throughout the incident giving rise to this lawsuit.

48. The subject hoverboard's defective condition actually and proximately caused injury and damage to C.E.

**WHEREFORE**, Plaintiff, Stephen Eisele, as the natural parent and legal guardian of C.E., demands judgment against Defendant, Walmart, Inc., for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, punitive damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

### COUNT IV—NEGLIGENCE
### (Against Walmart)

49. Plaintiff re-alleges and incorporates paragraphs 17 through 26 of this Complaint as if fully stated herein.

50. Walmart is engaged in the business of operating retail stores throughout the United States and Florida through which Walmart advertises, markets, distributes, and sells a wide range of consumer goods, including hoverboards.

51. Walmart marketed, advertised, supplied, distributed, and sold the subject hoverboard and placed subject hoverboard into the stream of commerce.

52. Walmart owed a duty to properly supply, distribute, and sell the subject hoverboard in a safe condition and without defect.

53. Walmart owed a duty to provide adequate warnings, instructions, education, and information with the subject hoverboard.

54. Walmart owed a duty to adequately test, inspect, and assure the quality of the subject hoverboard before placing the subject hoverboard into the stream of commerce.

55. Walmart breached the above duties.

56. Walmart's breach of the above duties actually and proximately caused injury and damage to C.E.

**WHEREFORE**, Plaintiff, Stephen Eisele, as the natural parent and legal guardian of C.E., demands judgment against Defendant, Walmart, Inc., for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, punitive damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

### COUNT V—BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against Walmart)

57. Plaintiff re-alleges and incorporates paragraphs 17 through 26 of this Complaint as if fully stated herein.

58. Walmart is engaged in the business of operating retail stores throughout the United States and Florida through which Walmart advertises, markets, distributes, and sells a wide range of consumer goods, including hoverboards.

59. Walmart is a merchant with respect to the subject hoverboard.

60. By selling the subject hoverboard and placing the subject hoverboard into the stream of commerce, Walmart impliedly warranted that the subject hoverboard was of merchantable quality.

61.    The subject hoverboard was not of merchantable quality for at least the following reasons:

   a. The subject hoverboard is defective in its design, manufacture, and/or warning;

   b. The subject hoverboard would not pass without objection in the trade under the contract description;

   c. The subject hoverboard is not of fair average quality;

   d. The subject hoverboard is not fit for the ordinary purposes for which such a good is used;

   e. The subject hoverboard does not run within the variations permitted of even kind, quality, or quantity;

   f. The subject hoverboard was not adequately contained, packaged, or labeled; and

   g. The subject hoverboard does not conform to the promises or affirmations of fact made by Walmart.

62.    The subject hoverboard's defective condition does not conform to the merchantable condition impliedly represented by Walmart at the time Eisele purchased the subject hoverboard at Walmart store 3207.

63.    As a result, Walmart breached the implied warranty of merchantability.

64.    Walmart's breach of the implied warranty of merchantability actually and proximately caused injury and damage to C.E.

**WHEREFORE**, Plaintiff, Stephen Eisele, as the natural parent and legal guardian of C.E., demands judgment against Defendant, Walmart, Inc., for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic

damages, punitive damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

### COUNT VI—STRICT LIABILITY
**(Against Walmart Stores)**

65. Plaintiff re-alleges and incorporates paragraphs 17 through 26 of this Complaint as if fully stated herein.

66. Walmart Stores is engaged in the business of operating retail stores throughout the United States and Florida through which Walmart Stores advertises, markets, distributes, and sells a wide range of consumer goods, including hoverboards.

67. Walmart Stores marketed, advertised, supplied, distributed, and sold the subject hoverboard and placed subject hoverboard into the stream of commerce.

68. The subject hoverboard is defective in its design, manufacture, and/or warning.

69. The subject hoverboard's defective condition rendered the subject hoverboard unreasonably dangerous for its intended or foreseeable use.

70. The subject hoverboard's defective condition existed at the time the subject hoverboard left Walmart Stores' possession, custody, and control, and the subject hoverboard remained in its defective condition until and throughout the incident giving rise to this lawsuit.

71. The subject hoverboard's defective condition actually and proximately caused injury and damage to C.E.

**WHEREFORE**, Plaintiff, Stephen Eisele, as the natural parent and legal guardian of C.E., demands judgment against Defendant, Walmart Stores, LP, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages,

non-economic damages, punitive damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

### COUNT VII—NEGLIGENCE
**(Against Walmart Stores)**

72. Plaintiff re-alleges and incorporates paragraphs 17 through 26 of this Complaint as if fully stated herein.

73. Walmart Stores is engaged in the business of operating retail stores throughout the United States and Florida through which Walmart Stores advertises, markets, distributes, and sells a wide range of consumer goods, including hoverboards.

74. Walmart Stores marketed, advertised, supplied, distributed, and sold the subject hoverboard and placed subject hoverboard into the stream of commerce.

75. Walmart Stores owed a duty to properly supply, distribute, and sell the subject hoverboard in a safe condition and without defect.

76. Walmart Stores owed a duty to provide adequate warnings, instructions, education, and information with the subject hoverboard.

77. Walmart Stores owed a duty to adequately test, inspect, and assure the quality of the subject hoverboard before placing the subject hoverboard into the stream of commerce.

78. Walmart Stores breached the above duties.

79. Walmart Stores' breach of the above duties actually and proximately caused injury and damage to C.E.

**WHEREFORE**, Plaintiff, Stephen Eisele, as the natural parent and legal guardian of C.E., demands judgment against Defendant, Walmart Stores, LP, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages,

non-economic damages, punitive damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT VIII—BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against Walmart Stores)

80. Plaintiff re-alleges and incorporates paragraphs 17 through 26 of this Complaint as if fully stated herein.

81. Walmart Stores is engaged in the business of operating retail stores throughout the United States and Florida through which Walmart Stores advertises, markets, distributes, and sells a wide range of consumer goods, including hoverboards.

82. Walmart Stores is a merchant with respect to the subject hoverboard.

83. By selling the subject hoverboard and placing the subject hoverboard into the stream of commerce, Walmart Stores impliedly warranted that the subject hoverboard was of merchantable quality.

84. The subject hoverboard was not of merchantable quality for at least the following reasons:

   a. The subject hoverboard is defective in its design, manufacture, and/or warning;

   b. The subject hoverboard would not pass without objection in the trade under the contract description;

   c. The subject hoverboard is not of fair average quality;

   d. The subject hoverboard is not fit for the ordinary purposes for which such a good is used;

   e. The subject hoverboard does not run within the variations permitted of even kind, quality, or quantity;

   f. The subject hoverboard was not adequately contained, packaged, or labeled; and

    g. The subject hoverboard does not conform to the promises or affirmations of fact made by Walmart Stores.

85. The subject hoverboard's defective condition does not conform to the merchantable condition impliedly represented by Walmart Stores at the time Eisele purchased the subject hoverboard at Walmart store 3207.

86. As a result, Walmart Stores breached the implied warranty of merchantability.

87. Walmart Stores' breach of the implied warranty of merchantability actually and proximately caused injury and damage to C.E.

**WHEREFORE**, Plaintiff, Stephen Eisele, as the natural parent and legal guardian of C.E., demands judgment against Defendant, Walmart Stores, LP, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, punitive damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: March 30, 2020

/s/ *Steven E. Nauman*
**ANDREW PARKER FELIX, ESQ.**
Florida Bar No.: 0685607
**STEVEN E. NAUMAN, ESQ.**
Florida Bar No.: 106126
**Morgan & Morgan, P.A.**
20 North Orange Avenue, Suite 1500
Orlando, FL 32801
Telephone: (407) 244-3962
Email: afelix@forthepeople.com
Email: snauman@forthepeople.com
Secondary Email: mhoilett@forthepeople.com
*Counsel for Plaintiff*